## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ENRIQUE LARA and GRACIELA TENA DE LARA,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-CV-509-JFJ** |
| | ) | |
| **BRIAN CARNEY and TAMMY CARNEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are Defendants' motion to strike the expert report of Rev. W.B. Smith ("Defendants' Motion to Strike") (ECF No. 20); Defendants' motion to exclude the testimony of Rev. Smith ("*Daubert* Motion") (ECF No. 25); and Plaintiffs' motion to strike Defendants' summary judgment exhibits ("Plaintiffs' Motion to Strike") (ECF No. 33).

For reasons explained below, Defendants' Motion to Strike is denied; Defendants' *Daubert* Motion is granted; and Plaintiffs' Motion to Strike is granted in part and denied in part.

### I.    Facts Alleged in Complaint

Plaintiffs entered a contract with Defendants for the purchase of a residential property ("Property") on February 12, 2024.  ECF No. 9 ¶ 8.  Prior to formation of the contract, Defendants delivered to Plaintiffs a Residential Property Condition Disclosure Statement ("Disclosure Statement").  *Id.* ¶ 10.  In the Disclosure Statement, Defendants stated they were unaware of:

1. the Property "being damaged or affected by flood, storm run-off… [or] draining defects;"
2. "water seepage, leakage or other draining defects in any of the improvements on the property;"
3. "any defect or condition affecting the interior or exterior walls, ceilings, roof structure, slab/foundation, basement/storm cellar, floors, windows, doors, fences or garage;"

1

   4. "any easements [other than utility easements serving the property] or
      right-of-ways affecting the property;" or
   5. Any "other defect(s) affecting the property not disclosed above."

*Id.* ¶¶ 11-20.  Defendants further disclosed that the roof of the Property had been replaced one year

earlier.  *Id.* ¶ 24.  On February 19, 2024, Plaintiffs conducted home inspections of the Property and

discovered no significant issues.  *Id.* ¶ 21.

   After Plaintiffs began residing at the Property, they discovered defects they claim should

have been disclosed in the Disclosure Statement. Such defects include (1) "a large hole near the

back of the fence in the backyard on the bank of Fry Creek" caused by erosion ("Fry Ditch

Erosion"); (2) "storm water runoff exposing the foundation footing," on the south side of the

Property ("Stormwater Runoff"); and (3) a roof leak ("Roof Leak").  *Id.* ¶¶ 23, 27.  Plaintiffs allege

Defendants violated Oklahoma's Residential Property Condition Disclosure Act ("RPCDA"),

Okla. Stat. tit. 60, §§ 831-839, by failing to disclose these defects.

## II.    Defendants' Motions Related to Rev. Smith's Expert Testimony

### A.    Summary of Report

   In support of their claims, Plaintiffs seek to offer the expert testimony of Rev. W.B. Smith,

P.E. CFM ("Smith"), President of Hydropower International Services, Inter-National Consultancy,

LLC.  Smith is a hydrologist with experience in the design and construction of hydroelectric,

hydrologic, and hydraulic engineering projects. ECF No. 31-1.  He serves as a floodplain

administrator and hydrologist for the Town of Ketchum, the City of Pryor Creek, the City of Beggs,

the City of Sapulpa, the Town of Coyle, and the City of Wagoner.  *Id.*

   Smith's report relates solely to Plaintiffs' claim that Defendants failed to disclose the defect

of Fry Ditch Erosion occurring behind the Property, which resulted in the large hole near the back

fence.  Smith's report is twenty pages in length, and it is not dated.  The report is entitled "Stanford

Elm/Wood Creek/Devanshire [sic]/The Links – Fry Ditch Bank Sloughing." ECF No. 25-1. The report can be divided into three sections: (1) observations and damage report completed for Stanford Elm Property Owners' Association ("Stanford Elm POA") on or around February 11, 2024, which constitutes the first eighteen pages, (2) a section entitled "Devonshire," which pertains to a different property and neighborhood, and (3) a section entitled "Wood Creek," which pertains to the Property at issue. *Id.*

In the first section, the report provides that Smith's company was retained by Stanford Elm POA "to provide professional engineering services for an initial evaluation and report of the bank de-stabilization of a portion of Fry Ditch Creek from E. 111th Street downstream to near the upstream end of Upgraded Fry Ditch Channel." ECF No. 25-1 at 1. Smith's company hired a drone service to take videos and photographs of "slough areas on both sides of the existing channel." *Id.* Smith then reviewed the photographs/videos and created a "'damage report' . . . primarily on the West Bank of Fry Ditch that is under the ownership of the Stanford Elm POA." *Id.* The report makes the following observation: "Both sides of the Fry Ditch have been affected by scouring, resulting in bank sloughing. . . . All parties that own the land need to maintain their respective sides of the creek; otherwise additional bank sloughing can be expected." *Id.* at 2. The report then offers a "description and estimate of probable construction costs" for "repair of each of the existing sloughs identified within the reach of Fry Ditch on the lands under the control of the Stanford Elm POA." *Id.* at 17. It provides estimated total construction costs for repair using either "rip-rap" or "gabion baskets." *Id.* at 18. As Smith admits, this section, which constitutes the vast majority of the report, was prepared for an entirely different client and purpose. *See* ECF No. 25-2, Smith Dep. at 31:18-32:24, 33:22-25 (acknowledging that the first eighteen pages of his report were copied from previous work in other neighborhoods).

3

In the final section of the report, Smith states that he was retained "to review [Plaintiffs']

specific property and provide an initial evaluation and estimate of costs for possible remediation."

ECF No. 25-1 at 19.  In its entirety, this section provides:

> On May 16, 2025, a site visit was made by Smith and various areas of scouring
> were observed at the back fence line. Some of the scouring appears to be recent
> from stormwater runoff from the lot; however, the larger issue that may be creating
> this localized drainage scouring is the larger scouring of the east bank of Fry Ditch.
> There appears to be two (2) levels of erosion/scouring of the Fry Ditch bank. The
> upper area appears to be from a large eddy formation and has eroded the existing
> bank approximately 2 feet in a semi-circle approaching the back of the [Client's]
> yard. The second area of scouring erosion is lower about 20 feet towards the Fry
> Ditch channel away from the fence. The lower scouring is located near the slight
> bend in Fry Ditch where [there] are trees in the creek that may be causing an eddy…
> to form during high flows.
>
> A more detailed field investigation and photographs will be required to further
> evaluate the situation on this property and develop a conceptual resolution and
> estimate of [probable] costs.
>
> It is our professional engineering opinion that this situation will only get worse with
> time and additional sloughing will likely occur in other locations along Fry Ditch,
> and/or the current slough areas will continue to deteriorate.

ECF No. 25-1 at 19-20.  It includes a "Google Earth" picture.  *Id.* at 19.

## B. Defendants' Motion to Strike

Defendants move to strike Smith's expert report pursuant to Federal Rules of Civil

Procedure 26 and 37 as a sanction for discovery noncompliance.  Rule 26(a)(2)(B) requires parties

to disclose any witnesses they may use as testifying experts at trial.  Such disclosure must be

accompanied by a signed, written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and
> reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the
> previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified
> as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  A party "must make these disclosures at the times and in the sequence that the Court orders."  Fed. R. Civ. P. 26(a)(2)(D).  Absent a court order or stipulation, the rule provides default deadlines in relation to the trial setting.  *Id.*

Rule 37(c)(1) permits sanctions for noncompliance with Rule 26(a)(2)(B)'s disclosure requirements.  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).  In addition to or instead of this sanction, the court may order payment of fees and expenses caused by the failure, inform the jury of the party's failure, or impose other appropriate sanctions.  *Id.*  Generally, some sanction must be imposed "unless the offending party can show substantial justification or harmlessness." *Cohlmia v. Ardent Health Services, LLC*, 254 F.R.D. 426, 429-30 (N.D. Okla. 2008).  "A litigant who fails to comply with these requirements does so at his peril." *Id.* at 429.

Defendants seek the sanction of striking Smith's report on two grounds: (1) some documents required by Rule 26 were provided after the Court's expert disclosures deadline; and (2) Plaintiffs' Rule 26 report failed to comply with the substantive requirements of Rule 26(a)(2)(B)(i)-(ii) because it omits certain opinions and/or does not set forth the basis for such opinions.

### 1.     Timeliness

The Court set a deadline of July 15, 2025, for the exchange of expert disclosures.  ECF No. 18.  Plaintiffs disclosed Smith as an expert and submitted his expert report by this deadline.  However, Plaintiffs failed to timely disclose the following additional information required by Rule 26: (1) Smith's curriculum vitae, which Plaintiffs provided ten days late on July 25, 2025, (2) a list

5

of other cases in which Smith testified as an expert, which Plaintiffs provided on July 25, 2025, as part of Smith's curriculum vitae, (3) the exhibits Smith relied on to support his report, which Plaintiffs provided fifteen days late on July 30, 2025, and (4) Smith's compensation arrangement, which Smith provided during his deposition on August 4, 2025.  Although Plaintiffs timely identified the expert and provided a report, Plaintiffs violated the Court's deadline with respect to several other required disclosures.

District courts have broad discretion to determine whether a Rule 26(a) violation is justified or harmless, such that the violating party may avoid sanctions.  *Cohlmia*, 254 F.R.D. at 429.  In making the determination, courts should consider (1) the prejudice or surprise to the party against whom the report is offered, (2) the ability of the party to cure any prejudice, (3) the extent to which allowing the testimony would disrupt any trial, and (4) any bad faith or willfulness on the part of the party offering the evidence.  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

The first and second factors weigh against imposing a sanction, because any untimely disclosures did not meaningfully interfere with Defendants' ability to depose the expert or defend issues raised in his report.  Defendants suggested August 4, 2025, for Smith's deposition.  *See* ECF No. 20-4 (email from Defendants' attorneys suggesting the deposition take place on any date from August 4 to August 7, 2025).  Defendants did not request additional preparation time from Plaintiffs or the Court.  Defendants' counsel took a thorough deposition of Smith on the agreed date, and Defendants relied on that deposition to make substantive arguments for exclusion of Smith's testimony under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  *See* ECF No. 25-2 (transcript of Smith's deposition); ECF No. 25 at 5-11 (quoting extensively from deposition of Smith).  Further, Defendants have not shown that the untimeliness of this information

prejudiced their ability to question the witness. The undisclosed information consisted only of Smith's qualifications, prior testimony, and certain exhibits. Although Plaintiffs showed a lack of diligence and forced Defendants to prepare quickly for a key deposition, the prejudice in this case was minimal and ultimately cured by disclosures occurring prior to or during the deposition.

The third factor weighs against imposing a sanction because there is no danger that allowing Smith's report would disrupt or delay trial. Defendants deposed Smith on August 4, 2025, and have complied with all other scheduling order deadlines. Defendants objected to Plaintiffs' request for an extension of the scheduling order, and the Court denied Plaintiffs' request. Permitting Smith's report will not disrupt the trial scheduled for January of 2026.

The final factor weighs in favor of sanctions because Plaintiffs acted "willfully" in failing to meet the deadline. Plaintiffs began working with Smith approximately two months prior to the expert disclosure deadline, *see* ECF No. 27 ¶ 2, and Smith first visited Plaintiffs' property on May 16, 2025, *see* ECF No. 27-1 at 30. However, Plaintiffs admit they first retained Smith as a *testifying* expert witness "on or about July 14, 2025," one day before the expert disclosure deadline of July 15, 2025. ECF No. 27 ¶¶ 5-6. This is an egregiously late date to inform Smith he will be utilized as a testifying expert and that he must provide supported trial opinions. Not surprisingly, several of his disclosures were untimely, and Plaintiffs were "still working on acquiring the remaining information" on the day of the deadline. *Id.* ¶ 8. Plaintiffs have not attempted to offer a justification or excuse, and Plaintiffs and/or Plaintiffs' counsel were at fault for the untimely disclosures. Plaintiffs' failure was therefore "willful," meaning "any intentional failure as distinguished from involuntary noncompliance." *See In re Standard Metals Corp.*, 817 F.2d 625, 628-29 (10th Cir. 1987) (explaining that no wrongful intent or bad-faith motive is necessary for finding of "willfulness" under Rule 37(c)); *Bosier v. Am. Fam. Mut. Ins. Co.*, No. 17-CV-02664-

KLM, 2019 WL 1254940, at *4 (D. Colo. Mar. 19, 2019) (finding that knowledge of relevant deadlines and lack of diligence in attempting to meet deadlines weighs in favor of finding of willfulness).

Considering all four factors, Plaintiffs have shown the timeliness violation was harmless, and that no sanction is appropriate. Although Plaintiffs acted without justification or excuse in failing to meet the July 15, 2025, deadline, Plaintiffs then worked diligently to provide most missing information within weeks of the deadline. All information was received prior to or during the expert deposition. Defendants suffered minimal prejudice, and the trial was not delayed. Under these circumstances, the Court declines to impose the drastic sanction of exclusion of the expert report. *See Lamonica v. Hartford Ins. Co. of the Midwest*, 336 F.R.D. 682, 687 (N.D. Fla. 2020) (finding untimely disclosure harmless despite expert disclosures occurring more than a month after deadline); *cf. Hudgins v. Vermeer Mfg. Co.*, 240 F.R.D. 682, 684 (E.D. Okla. 2007) (striking expert report where report itself was disclosed after discovery cutoff and dispositive motion deadline, and party seeking sanction suffered extreme prejudice by losing ability to challenge expert and otherwise prepare for trial).

### 2.    Other Deficiencies

Because some arguments overlap and both motions seek identical relief, the Court elects to address any failures to disclose Smith's opinions or the facts supporting them in the context of Defendants' *Daubert* Motion.

### C.    *Daubert* **Motion**

Defendants seek to exclude Smith from testifying at trial pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceutical, Inc.,* 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

This rule "assigns to district courts a gatekeeping function with respect to the admissibility of expert opinions." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). "The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Id.*

Before permitting a factfinder to assess the expert's testimony, a court must satisfy itself that: (1) the expert is qualified by knowledge, skill, experience, training, or education to render an opinion; and (2) the proposed testimony is both reliable and relevant in that it will assist the trier of fact. *Id.* Notably, the second step has two distinct components – reliability and relevancy. *Id.* (citing *N. Am. Specialty Ins. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1112 (10th Cir. 2009)).

Defendants challenge only the second prong – namely, whether Smith's opinions are reliable and relevant. As to reliability, the proponent of expert testimony must show that the expert's opinion is "based on facts that satisfy Rule 702's reliability requirements." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Further, the opinion must be based on facts that enable the expert to express a reasonably accurate conclusion, rather than conjecture or speculation. *See Kieffer v. Weston Land, Inc.,* 90 F.3d 1496, 1499 (10th Cir. 1996). The court must assess the reasoning and methodology underlying the expert's opinion and determine whether it is scientifically valid and applicable to the facts of the case. *See Daubert*, 509 U.S. at 592-93. A court may refuse to admit opinion evidence that is connected to existing data only by the *ipse dixit*

of the expert, *i.e.*, when "there is simply too great an analytical gap between the data and the opinion proffered." *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

As to relevance, "[r]elevant evidence 'means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005) (quoting Fed. R. Evid. 401). "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'" *Id.* (citing *Daubert,* 509 U.S. at 591).

Here, the testimony must be relevant to an RPCDA claim. Under the RPCDA, a buyer must prove the following elements: (1) "[a] material defect or defects existed in the residence," (2) the seller "failed to disclose the defect or defects in the residence to [the buyer] in a written disclosure statement," (3) the seller "had actual knowledge of the defect or defects before the acceptance of the offer to purchase the residence," and (4) the buyer suffered damages as a result. Okla. Unif. Jury Instr. CV 30-3; *see also Rickard v. Coulimore*, 505 P.3d 920, 923 (Okla. 2022) (requiring that the buyer show that a seller failed to disclose a defect "which was actually known to the seller prior to acceptance of an offer to purchase").

Smith's report does not delineate a numbered set of "opinions," and it is unclear what opinions he intends to offer at trial. Considering arguments made in briefs and at the hearing conducted October 14, 2025, the Court concludes that Plaintiffs seek to offer four expert "opinions" of Smith. For reasons explained below, all four opinions are irrelevant, unreliable, and/or not properly included in the expert report. Smith will not be permitted to offer any expert testimony for purposes of summary judgment or trial.

10

### 1.    Historic Scouring

Smith's first opinion relates to what Plaintiffs refer to as "historic scouring" at Fry Ditch, which they claim is relevant to Defendants' knowledge of the alleged defect of erosion.  This opinion is encompassed in the first eighteen pages of the report.  For example, Smith seeks to offer the following general opinion: "Both sides of the Fry Ditch have been affected by scouring, resulting in bank sloughing . . . . All parties that own the land need to maintain their respective sides of the creek; otherwise additional bank sloughing can be expected."  ECF No. 25-1 at 2.

These opinions in the first eighteen pages of the report are irrelevant and not adequately tethered to this litigation.  Smith formed such opinions around January and February of 2024, approximately a year and a half prior to his involvement in this case.  Smith based this opinion on his survey of an entirely different neighborhood across Fry Ditch from the Property and on behalf of a neighborhood association other than Wood Creek.  *See* ECF No. 25-1 at 1-2; ECF No. 25-2 (Smith Dep.) at 31:18-32:24, 33:22-25 (acknowledging that the first eighteen pages of his report were copied from previous work in other neighborhoods).  Smith also admitted in his deposition that "the creek changes over time," *id.* at 11:23-24, and that the sloughing at issue in the prior survey and damage report for Stanford Elm POA was drastically different from that near the Property at issue, *id.* at 32:22-24 ("When you have a 35-foot tall bank that's sloughing, it's a whole lot different than a 12-foot bank sloughing."), 43:22-23 (stating that Smith's view of the Property "wasn't as clear as what I saw at the [the other property previously surveyed]").  This "opinion" on the "historic scouring" of Fry Ditch does not bear an adequate relationship to the Property, or to Defendants' knowledge of erosion on or affecting the Property.  Although Smith is clearly qualified to offer expert testimony on the general topic of erosion at Fry Ditch, this case turns on whether erosion was an undisclosed "defect" for the purposes of a single residential property.  Any

opinion about "historical" scouring issues at different areas of Fry Ditch, performed for other purposes at other areas of Fry Ditch, is not relevant or helpful to the trier of fact in deciding whether Defendants violated the RPCDA in relation to the Property at issue.

### 2.      Scouring at Back Fence Line

Smith's second opinion relates directly to this case and was formed during a site visit to the Property conducted on May 16, 2025.  This opinion reads:

> Various areas of scouring were observed at the back fence line.  Some of the scouring appears to be recent from stormwater runoff from the lot; however, the larger issue that may be creating this localized drainage scouring is the larger scouring of the east bank of Fry Ditch.  There appear[] to be two (2) levels of erosion/scouring of the Fry Ditch bank.  The upper area appears to be from a large eddy formation and has eroded the existing bank approximately 2 feet in a semi-circle approaching the back of the [Client's] yard. The second area of scouring erosion is lower about 20 feet towards the Fry Ditch channel away from the fence.  The lower scouring is located near the slight bend in Fry Ditch where [there] are trees in the creek that may be causing an eddy . . . to form during high flows.

ECF No. 25-1 at 19.

Although this opinion relates to the Property at issue, the opinion is preliminary and not based on sufficient data.  Smith visited the Property one time before authoring this portion of the report several months later.  *See* ECF No. 25-2 at 35:13-14, 50:18-19.  Smith lost all photos he took of the Property during the visit.  *Id.* at 56:9-14.  The only photo Smith relied on in forming this opinion was taken from Google Earth. ECF No. 25-1 at 19.  Smith took no notes while conducting this site visit.  ECF No. 25-2 at 56:24-57:1.  Tellingly, Smith concluded in his report that "[a] more detailed field investigation and photographs will be required to further evaluate the situation on this property. . . ."  ECF No. 25-1 at 20.  This language and Smith's deposition testimony demonstrate that any findings based on the May 2025 visit were preliminary, and that Smith intended to do further analysis before offering any trial opinions.  Smith was unable to do that, because counsel informed him that he would be a testifying trial expert one day before the

expert report deadline.  At the time of submitting the report, Smith had not considered sufficient information or data to render this trial opinion.  *See United States v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008) (explaining that expert may be excluded where an opinion is not based on adequate quantity of data).

This opinion is also overly speculative, as evidenced by the suggestive language in the report.  Smith states only that "[s]ome of the scouring *appears* to be recent from stormwater runoff," but "the larger issue that *may* be creating this localized drainage scouring is the larger scoring of the east bank of Fry Ditch."  ECF No. 25-1 at 19 (emphasis added).  He further states that there "*appears* to be two (2) levels of erosion/scouring . . ." and that "[t]he upper area *appears* to be from a large eddy formation . . . ." *Id.* at 19 (emphasis added).  Smith's own language indicates his conclusions are speculative, rather than grounded in adequate data or study related to the Property.  *See Vox Mktg. Grp., LLC v. Prodigy Promos L.C.*, 521 F. Supp. 3d 1135, 1153 (D. Utah 2021) (excluding expert opinion that a chief operating officer *may* have known that a control login feature had been disabled as "rank speculation").  Further, as explained above, Smith visited the Property only once, he took no notes during that visit, he lost all photos taken during the site visit, and he used a Google Earth photo to draft the report.  ECF No. 25-2 at 35:13-14, 50:18-19, 56:9-14, 56:24-57:1; ECF No. 25-1 at 19.  The gap between the scant evidence Smith considered and his speculative "opinion" on scouring near the Property is too great to assist a finder of fact.

### 3.    Future Erosion

In the only clear "opinion" offered in the report, Smith states: "It is our professional engineering opinion that this situation will only get worse with time and additional sloughing will likely occur in other locations along Fry Ditch, and/or the current slough areas will continue to deteriorate."  ECF No. 25-1 at 20.

Like his opinion on current erosion, this opinion on future erosion is not based on sufficient data and is overly speculative. Smith expressly testified that he needed more information to support any opinion about future erosion. ECF No. 25-2 at 26:2-9. He could not conclude if or when the erosion would ever reach or affect the Property. *Id.* at 44:19-2, 45:10-17, 46:7. He did not create a specific analysis or model for erosion and stormwater affecting the Property, and he admitted he could not do so without further study and analysis. *Id.* at 59:18-24. Smith also admitted he could not predict the extent of erosion from Fry Ditch in the future. *Id.* at 72:16-24. Smith's opinion that "the situation will only get worse with time" is too speculative and unreliable to be admitted at trial.

### 4. Remediation Costs

As first explained by Plaintiffs' counsel during oral argument, Plaintiffs also apparently seek to offer Smith's opinion that the estimated remediation costs for erosion to the Property would be approximately $200,000, based on an estimate he completed for another property on Fry Ditch.

First, this opinion on remediation costs was not disclosed in the expert report in any manner. Allowing this opinion would result in significant unfair prejudice and surprise to Defendants. Therefore, the Court finds exclusion appropriate under Rules 26 and 37.

Second, assuming this opinion had been properly disclosed, it is unreliable and not adequately tethered to the facts of this case. Smith did not complete an estimate of remediation costs for the Property at issue by the time of the report. He stated that "[a] more detailed field investigation and photographs will be required to further evaluate the situation of [the subject property] and develop a conceptual resolution and estimate of the . . . costs." ECF No. 25-1 at 20. The proposed remediation opinion is based on an estimate prepared by Smith for the Robinsons, a couple that owned property on the opposite bank of Fry Ditch in an entirely different

14

neighborhood.  Smith expressly testified that the erosion and costs of remediation for different sections of Fry Ditch vary depending on, among other things, the height of the banks.  ECF No. 25-2 at 32:22-24 ("When you have a 35-foot tall bank that's sloughing, it's a whole lot different than a 12-foot bank sloughing."), 43:22-23 (stating that "it wasn't as clear as what I saw at the [other property]").  Nothing in Smith's report or testimony provides a reasonable basis for an opinion that the costs of a remediation of erosion near the Property would be identical or even similar to the remediation cost estimates prepared for the Robinsons.

Finally, the opinion is not relevant to damages.  Smith admitted in his deposition that the Woodcreek Homeowner's Association ("Woodcreek HOA"), not Plaintiffs, would bear the costs of any remediation along the "back fence line" of the Property.  Smith admitted, based on review of undisputed property descriptions and boundaries, that the "back fence line" is on a section of land known as Reserve C, which is outside the boundaries of the Property and owned by the Woodcreek HOA.  *See* ECF No. 25-2 at 26:7-9 ("Wood Creek HOA is behind Mr. Lara's property and so it's the HOA truly that is the property owner that would have to do this."), 71:16-25 (acknowledging that the Wood Creek HOA owns the section of Fry Ditch behind the subject property and would be responsible for remediation), 72:5-7 ("The maintenance of that property is the responsibility of Stanford Elm HOA, Wood Creek HOA…").  Any opinion on remediation costs for the creek behind Plaintiffs' property is not relevant, because such costs would not be borne by Plaintiffs.[1]

---

[1]  For similar reasons, in an Opinion and Order entered this date, the Court holds that Plaintiffs cannot prove damages for this alleged defect under the RPCDA.

### III.    Plaintiffs' Motion to Strike

Plaintiffs object to Defendants' summary judgment exhibits within their response brief pursuant to Federal Rule of Civil Procedure 56(c) and filed a separate motion to strike such exhibits.[2] Rule 56(c) provides:

> (1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

Based on this plain language of Rule 56(c)(2), evidence need not be presented in an admissible form at the summary judgment stage.  Rather, the objecting party must show the evidence could never be presented in an admissible form at trial.  *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) ("At the summary judgment stage, the parties need not submit evidence in a form admissible at trial; however, the content or the substance of the evidence must be admissible."); *Oglesby v. Lesan*, 929 F.3d 526, 534 (8th Cir. 2019) (affirming admission of evidentiary materials on summary judgment because the opposing party made "no showing that these documents *could not* be presented at trial in an admissible form"); *Gomez v. City of Vacaville*, 483 F. Supp. 3d 850, 860 (E.D. Cal. 2020) ("[T]he evidentiary standard for admission at the

---

[2]  The motion to strike was not procedurally necessary.  *See* Fed. R. Civ. P. 56, advisory committee's notes to 2010 amendment ("There is no need to make a separate motion to strike."); *Spray v. Bd. of Cnty. Comm'rs of Okla. Cnty.*, No. CIV-20-1252-R, 2023 WL 5439759, at *6 (W.D. Okla. Aug. 23, 2023).  In its discretion, the Court elects to address the objections in this separate Order, rather than within the summary judgment Order filed this date.

summary judgment stage is lenient: A court may evaluate evidence in an inadmissible form if the evidentiary objections could be cured at trial.").  Once such an objection is made, the burden is on the proponent of the evidence "to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Turner v. Metro. Prop. & Cas. Ins. Co.*, 601 F. Supp. 3d 1066, 1071 (N.D. Okla. 2022).

### A.      Defendants' Exhibit 8 – Objections Overruled

Exhibit 8 is a document entitled White Surveying Company Boundary Survey, executed by Registered Professional Land Surveyor of Oklahoma John L. Libby, Jr., dated March 7, 2025. Plaintiffs argue this evidence cannot be presented in an admissible form at trial because (1) Defendants do not have an expert witness to explain the survey; and (2) the survey is "inadmissible hearsay if it is not properly authenticated or if it fails to meet specific evidentiary standards."  ECF No. 33 at 3.

Plaintiffs failed to show Defendants cannot admit Exhibit 8 at trial.  Defendants intend to call a representative of White Surveying Company to authenticate the survey based on personal knowledge pursuant to Federal Rule of Evidence 901(b)(1).  The survey is also likely admissible based on its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" under Rule 901(b)(4).  Further, the survey was prepared after litigation began, and counsel for both parties were present when Mr. Libby conducted the survey.  Under these circumstances, the survey is likely to be admissible at trial, without the need for supporting expert testimony.  *See United States v. Rey*, 663 F. Supp. 2d 1086, 1094 (D.N.M. 2009) (making finding of fact regarding location of a marijuana grow based in part on a land survey, without expert testimony explaining survey).

17

Plaintiffs' cited cases do not stand for the proposition that expert testimony is required to admit a land survey into evidence. In two of these cases, courts *permitted* parties to utilize expert witnesses to explain complex issues surrounding land surveys. *See United States v. Estate of St. Clair,* 819 F.3d 1254, 1264 (10th Cir. 2016) (utilizing expert testimony where case involved 140 years' worth of historical land surveys); *Valley View Dev., Inc. v. U.S. ex rel. U.S. Army Corps of Eng'rs*, 721 F. Supp. 2d 1024, 1048 (N.D. Okla. 2010) (permitting expert testimony from land surveyor, because such expert would "shed light on the meaning of technical terms, technical drawings, and the nature and purpose of the flowage easement" at issue). In the third cited case, the Tenth Circuit categorized testimony calculating the "post-fire estimate of the pre-fire value of a dilapidated, condemned, 39-year old building" as expert testimony rather than lay testimony. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011). None support the contention that expert testimony is required to admit a land survey into evidence.

Although couched as a "hearsay" argument, Plaintiffs' second argument focuses on lack of authentication. *See* ECF No. 33 at 4 ("[The Carneys] provided no authentication, no affidavit, and no other information to verify that their interpretation was true and correct."). As explained above, Defendants have adequately shown they will authenticate the survey through testimony of a representative of White Surveying Company, and the Court does not find expert testimony required. To the extent Plaintiffs argue the survey is inadmissible hearsay, the Court agrees with Defendants that the document would likely qualify for the exception for "records of a regularly conducted activity" in Federal Rule of Evidence 803(6).

**B.    Defendants' Exhibit 9 – Objections Moot**

Exhibit 9 is an uncertified Joint Tenancy Warranty Deed executed by Defendants on March 8, 2024.  Plaintiffs object to Exhibit 9 on the basis that the deed is not recorded or certified, citing Federal Rules of Evidence 902(4) and 1005.

Defendants relied on Exhibit 9 in their motion for summary judgment for the sole purpose of proving the legal description of the Property.  *See* ECF No. 24 at 7, Def. Undisputed Material Fact 9.  Plaintiffs do not dispute the legal description of the Property, and this Rule 56(c)(2) objection is denied as moot.

**C.    Defendants' Exhibits 10 and 11 – Objections Overruled**

Exhibits 10 and 11 consist of an email exchange between Plaintiff Graciela Tena de Lara and City of Bixby Mayor Brian Guthrie, dated July 26, 2024.  Plaintiffs object to the emails as hearsay.

Plaintiffs failed to show Defendants cannot admit these emails, or the information contained in the emails, at trial.  Any emails from Ms. Lara to Mayor Guthrie are not hearsay because they will be offered against an opposing party, and the statements were "made by the party in an individual or representative capacity."  Fed. R. Evid. 801(d)(2).  With respect to any emails sent by Mayor Guthrie, Defendants may subpoena and call Mayor Guthrie to testify about the contents of his communications with Ms. Lara, rendering the information contained in the emails admissible.  Further, Mayor Guthrie's written responses to Ms. Lara's inquiries may be admissible under the hearsay exception in Federal of Evidence Rule 803(8) for "public records."  That rule provides that statements made by a public office are not hearsay if they set out the "office's activities," and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803(8)(A)(i)&(B).  Here, Mayor Guthrie's emails

describe the activities and conclusions of the municipality.  *See, e.g.*, ECF No. 24-10 ("City officials have toured the creek on several occasions.  There is no dispute who owns the creek. . . . This is something we are working on to try and help the situation, but have not found a solution as of yet.").  The Court has no reason to believe these emails lack trustworthiness, and the Court finds they can be presented at trial under this hearsay exception.  *See Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1302 (11th Cir. 2022) (finding that district court abused its discretion in refusing to admit letters from "Colombian prosecutors, excerpted from Justice and Peace Law files" despite there being no evidence of untrustworthiness); *Jones v. Perry*, 215 F. Supp. 3d 563, 567 n.1 (E.D. Ky. 2016) (finding that letter from a prison warden satisfied Fed. R. Evid. 803(8)(A)(i)).

Finally, as to Exhibit 11, Defendants rely on that exhibit in their motion to show that the Laras "knew that the Woodcreek HOA owned Reserves C and D before bringing this action."  ECF No. 24 at 4, UMF 17.  Mayor Guthrie's statements regarding ownership are non-hearsay if offered to prove the effect on Ms. Lara, rather than for the truth of his statements.  *See United States v. Martinez*, 122 F.4th 389, 414 (10th Cir. 2024) (holding that "[s]tatements admitted for this purpose can be relevant to proving the intent, knowledge, beliefs, motivation, or any other reaction of the person who heard it" and were non-hearsay).

### D.    Defendants' Exhibit 12 – Objections Overruled

Exhibit 12 is a Mortgage Inspection Report prepared by Baker Surveying, LLC, which sets forth boundary lines of the Property.  Plaintiffs object to the report on grounds that Defendants failed to retain an expert to testify regarding the report, and the report is inadmissible hearsay.

Plaintiffs failed to show Defendants cannot admit this inspection report at trial.  As stated previously, expert testimony is not required to admit documents showing property boundaries or

borders in every case.  This particular report is not overly technical, sets forth the boundaries of the property, and can be authenticated by its preparer.  Further, Plaintiffs admitted they initialed and received Exhibit 12. The Court finds expert testimony is not required for admission of this report.

With respect to the hearsay objection, Defendants do not rely on Exhibit 12 for the truth or accuracy of the boundary lines.  Defendants rely on Exhibit 12 to support the assertion that the "Laras received, reviewed, and initialed a mortgage inspection report provided in conjunction with the closing documents that identified where the property line ends as well as Reserve C and Reserve D."  ECF No. 24 at 4, UMF 11.  Exhibit 12 is therefore being offered for a non-hearsay purpose – namely, to show an effect on the recipient.  *See Martinez*, 122 F.4th at 414.

E.    **Defendants' Exhibit 15 – Court Declines to Rule on Objections**

Exhibit 15 is a Uniform Residential Appraisal Report prepared by Jimmy Richie on or around October 19, 2007.  Plaintiffs object to Exhibit 15 because Defendants have not retained an expert to explain the report and because the report includes hearsay.

Defendants relied on this report to prove the Property was "one of the most desired lots in the neighborhood because of the creek behind the property."  ECF No. 24 at 4, UMF 19.  In their response to the motion to strike, Defendants concede this fact is not material or necessary to resolution of their motion for summary judgment.  To avoid any unnecessary ruling on an evidentiary objection, the Court will disregard Exhibit 15 and this statement of fact in ruling on Defendant's motion for summary judgment.

### F.    Defendants' Exhibit 20 – Court Declines to Rule on Objections

Exhibit 20 is a letter to Defendants from Farmers Insurance Company dated November 11, 2022, regarding an insurance claim submitted by Defendants related to a roof repair.  Plaintiffs argue that Exhibit 20 is inadmissible hearsay.

Defendants rely on this letter to prove they "replaced the roof of their house in November 2022 as part of a hail loss claim with their insurance company."  ECF No. 24 at 5, UMF 25. However, Defendants also relied on their own verified interrogatory responses, which are not challenged.  *See id*.  To avoid any unnecessary ruling on an evidentiary objection, the Court will disregard Exhibit 20 in ruling on Defendant's motion for summary judgment and rely solely on Defendants' verified responses in analyzing UMF 25.

## IV.    Conclusion

For the above-described reasons, it is ORDERED that:

(1)  Defendants' Motion to Strike the entire expert report of Rev. W.B. Smith as a discovery sanction (ECF No. 20) is **DENIED**.

(2)  Defendants' Motion to Exclude Rev. Smith as an expert under Rule 702 and *Daubert* (ECF No. 25) is **GRANTED**.

(3)  Plaintiffs' Motion to Strike Defendants' Summary Judgment Exhibits (ECF No. 33) is **DENIED** as to Exhibits 8, 10, 11, and 12, and **DENIED AS MOOT** as to Exhibit 9.  The Court declines to reach the objections on Exhibits 15 and 20 at this time but will disregard such exhibits for purposes of summary judgment.

**SO ORDERED** this 3rd day of December, 2025.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**