## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ENRIQUE LARA and GRACIELA TENA DE LARA, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 24-cv-00509-JFJ |
| | ) | |
| BRIAN CARNEY and TAMMY CARNEY, | ) ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment ("Motion for Summary Judgment") (ECF No. 24), which is fully briefed. The Court conducted a hearing on the Motion for Summary Judgment on October 14, 2025 ("Hearing").

On this date, the Court issued an Opinion and Order ruling on the admissibility of the expert testimony of Reverend Smith ("Smith") and the admissibility of Defendants' exhibits for summary judgment purposes. *See* ECF No. 56. Such ruling is incorporated herein by reference.

For reasons explained below, the Motion for Summary Judgment is granted in part and denied in part.

### I.    Relevant Facts and Plaintiffs' Claims[1]

#### A.    Purchase of the Property

In February of 2024, Defendants Brian Carney ("Brian") and Tammy Carney ("Tammy") contracted to sell residential property located at 11190 S. 72nd E. Ave. in Bixby, Oklahoma (the "Property") to Plaintiffs Enrique Lara ("Enrique") and Graciela Tena De Lara ("Graciela").

---

[1] The following facts are derived from admissible portions of the summary judgment record, based on the Court's prior ruling. *See* ECF No. 54. If facts are disputed, the Court explains such dispute.

Defendants provided Plaintiffs with a disclosure statement using the form provided by the Oklahoma Real Estate Commission ("Disclosure Statement"), which Plaintiffs countersigned and acknowledged on February 11, 2024. ECF No. 24-3. The Disclosure Statement included representations by Defendants that the Property had not been damaged or affected by flood, storm run-off, draining or grading defects; that Defendants were unaware of any water seepage, leakage, or other draining effects; and that Defendants were unaware of any defects affecting the roof structure of the Property. *Id.* The Disclosure Statement disclosed that the roof had been replaced, and French drains had been installed to assist in draining the property. *Id.* On or about February 19, 2024, Plaintiffs had the Property professionally inspected. *See* ECF Nos. 24-16, 24-17 (inspection reports). The parties closed on the Property on or about March 15, 2024. Brian lived on the Property until the date of closing, and Plaintiffs moved into the Property approximately two weeks after closing.

There are two areas behind the Property identified as Reserve C and Reserve D, which are outside the boundaries of the Property. *See* ECF No. 24-8 (Boundary Survey). Fry Ditch Creek ("Fry Ditch") runs along Reserve D, which begins approximately twenty feet behind the Property. *Id.* Sometime prior to sale, Defendants erected a chain-link fence ("Back Fence") on Reserve C, approximately thirteen feet behind the Property. *See* ECF No. 34-3, Brian Dep. at 47:16-49:14; ECF No. 24-8. Reserve C and Reserve D are owned by Wood Creek Homeowner's Association ("Woodcreek HOA"). *See* ECF No. 24-1, Graciela Dep. at 149:18-25; ECF Nos. 24-10, 24-11 (Graciela's email exchanges with City of Bixby discussing ownership of Fry Ditch). *See also* ECF No. 34 at 4 ("Plaintiffs generally do not dispute that Reserve C and D are located behind their Property or that they are owned by [Woodcreek HOA]"). At the time of closing, Plaintiffs initialed

a mortgage inspection report showing Reserve C and Reserve D are outside the boundaries of the Property. ECF No. 24-12 (Mortgage Inspection Report).

### B.    Alleged Defects and Damages

After moving in, Plaintiffs discovered three defects they claim should have been disclosed by Defendants on the Disclosure Statement. Plaintiffs, at the time of answering interrogatories, were not aware of any decrease in the fair market value of the Property. ECF No. 24-7 at 11. However, had defects been disclosed, the defects "would have affected the sale price" and/or "Plaintiffs would have offered a lower price for the property." *Id.* The three defects are as follows.

#### 1.    Fry Ditch Erosion

Plaintiffs discovered significant erosion of the bank of Fry Ditch, which caused a large hole and other erosion problems near the Back Fence. Graciela explained: "So the sellers put bricks and dirt over it, so we weren't able to see all that erosion in the back, but as soon as it rained, the dirt . . . washed away, and it created a big ditch, and the fence started caving in because of the water coming through the property . . . ." ECF No. 34-1, Graciela Dep. at 14:24-15:5. The Court refers to this alleged defect as "Fry Ditch Erosion." Fry Ditch Erosion, for purposes of this Order, includes all erosion along the bank of Fry Ditch itself, and all erosion, holes, and other problems at the Back Fence. Plaintiffs expended money and time on repairs related to Fry Ditch Erosion and seek further damages to continue remediation of this alleged defect.

#### 2.    Stormwater Runoff

Plaintiffs also discovered a second type of erosion along the fence on the south side of the Property, which Plaintiffs contend resulted from stormwater runoff from a neighbor's property. ECF No. 34-1, Graciela Dep. at 20:23-22:7, 37:3-5, 87:12-19. Graciela testified that "it looked like the water had washed away the dirt on that side of the property." ECF No. 34-1, Graciela Dep.

at 18:23-24. She further testified that Plaintiffs "started noticing the drains getting visible along the side," and that they "started seeing the footage of the house . . . where the concrete is at the bottom." *Id.* at 87:16-19. Graciela further testified that "when you're on that side of the property, there on the wall, on the stucco, you can see where the fence used to be higher." *Id.* at 17:1-3. The Court refers to this alleged defect on the south side of the Property as "Stormwater Runoff." Plaintiffs expended money and time making repairs to abate Stormwater Runoff, with materials costing between $1,000 and $5,000. *Id.* at 24:13-16.

### 3.    Roof Leak

Plaintiffs discovered a roof leak soon after moving in. Graciela testified that the roof began "leaking just the first time it rained when we moved in and that is why I realized it was not a new issue." ECF No. 34-1, Graciela Dep. at 109:14-16.[2]    The Court refers to this defect as "Roof Leak." Plaintiffs hired their own roofer to repair the leak, expending approximately $4,500. *See* ECF No. 24-7 at 4.

### C.    Defendants' Knowledge

Defendants deny having actual knowledge of the Fry Ditch Erosion, Stormwater Runoff, or Roof Leak at the time of their required disclosures.[3]

As to Stormwater Runoff, Defendants offered the following evidence. Defendants and a neighbor installed French drains to catch water running off their roof about ten years before the

---

[2]  Plaintiffs offered various dates of discovery of the Roof Leak, ranging from a few weeks after closing to a month after closing. *See* ECF No. 24-7 at 11 (providing discovery date of March 29, 2024); ECF No. 34 at 6 ¶ 19 (stating leak was discovered "[a]pproximately a month after moving in").

[3]  Because the Court grants summary judgment on the defect of Fry Ditch Erosion without reaching the issue of Defendants' knowledge of such defect, the Court does not include relevant facts on this issue.

sale.  ECF No. 24-4, Brian Dep. 70:5-10, 76:14-77:8.  Defendants disclosed installation of these drains on the Disclosure Statement.  ECF No. 24-3.  The south side of the Property has only dirt and no grass due to lack of sun, rather than due to any problems with Stormwater Runoff.  ECF No. 24-4, Brian Dep. at 90:3-6.  According to Defendants, the Property experienced normal water flow that would be associated with any rainfall.  *Id.* at 76:24-77:23, 87.

In response, Plaintiffs offered the following evidence.  After being approached by a neighbor, Defendants had agreed to spend approximately $10,000 to address water flow on the Property from their roof and their neighbors' water runoff.  ECF No. 34-4, Tammy Dep. at 22:18-22, 23:11-20.  After experiencing problems with Stormwater Runoff on the south side of the Property upon moving in, Plaintiffs explored the issue and concluded that fencing on the south side had been "lowered" prior to sale.  ECF No. 34-1, Graciela Dep. at 16:20-17:4; ECF No. 34-2, Enrique Dep. at 171:3-172:10.  According to Enrique, the lack of grass on the south side of the Property is due at least in part to Stormwater Runoff, which he realized "after the whole washout of the summer."  *Id.* at 138:12-20.

As to the Roof Leak, Defendants offered the following evidence.  Defendants replaced their roof in November 2022 as part of a hail damage loss claim and disclosed such repair on the Disclosure Statement.  *See* ECF Nos. 24-18 at 9, 24-19 at 9.  Plaintiffs' roof inspectors did not identify a leak.  ECF No. 24-17 (Barnett Roof Inspection Report).  Graciela testified that the roof was not leaking on the day of closing to her knowledge.  ECF No. 34-1, Graciela Dep. at 108:17-19.  Enrique testified that a visible stain in the garage was "still dry" when they started moving in, even though it had rained some.  ECF No. 24-2, Enrique Dep. at 42:7-43:22.

In response, Plaintiffs offered the following evidence.  During the inspection, the inspector noticed a dry water stain inside the garage ceiling.  ECF No. 34-2, Enrique Dep. at 41:6-42:25;

ECF No. 34-7 at 6.  Plaintiffs assumed the stain occurred prior to the roof replacement.  ECF No. 34-2, Enrique Dep. at 42:14-18, 45:1-3.  Plaintiffs became concerned about the area with the water soon after moving in.  *Id.* at 40:23-25 (stating that he noticed water stain was now wet); ECF No. 34-1, Graciela Dep. at 108:14-16 (stating that roof was leaking "within weeks" of moving in).  Plaintiffs contacted Defendants' roofer who had completed the roof replacement in 2022.  The roofer was located in Texas, was not licensed in Oklahoma, repaired the roof as a favor to Defendants, and would not warrant or repair his allegedly defective work.  ECF No. 34-1, Graciela Dep. at 50:18-22, 73:20-74:10, 108:1-109:17.  Plaintiffs then hired their own roofer, who determined that the prior roofer "inadequately installed/sealed the roof in the 'dead valley' which is directly above the garage."  ECF No. 24-7 at 6.

### D. Plaintiffs' Claims

In the Amended Complaint, all claims are premised on one of the three undisclosed defects explained above: Fry Ditch Erosion, Stormwater Runoff, and Roof Leak.  Based on the Complaint and clarifications by Plaintiffs' counsel at the Hearing, the Court summarizes the Amended Complaint as follows: (1) Count 1: failing to disclose awareness of "the property being damaged or affected by flood, storm run-off, sewer backup, draining or grading defects" – namely,  Fry Ditch Erosion and Stormwater Runoff, ECF No. 9 ¶ 45; (2) Count 2: failing to disclose awareness of "water seepage, leakage or other draining defects in any of the improvements on the property" – namely, Stormwater Runoff, *id.* ¶ 53; (3) Count 3: failing to disclose awareness of "any defect or condition affecting the interior or exterior walls, ceilings, roof structure, slab/foundation, basement/storm cellar, floors, windows, doors, fences or garage" – namely, Stormwater Runoff and Roof Leak, *id.* ¶ 61; (4) Count 4: failing to disclose awareness of "any easements or right-of-

ways affecting the property," *id.* ¶ 69;[4] (5) Count 5: failing to disclose awareness of "other defect(s) affecting the property," – namely, Fry Ditch Erosion, Roof Leak, and Stormwater Runoff, *see id.* ¶ 77.

## II.    Defendants' Motion for Summary Judgment

For reasons explained below, Defendants are entitled to summary judgment only on the alleged defect of Fry Ditch Erosion.

### A.    Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*  As the court makes this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

A party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c); *see Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994) ("Even though all doubts

---

[4] During the Hearing, Plaintiffs' counsel conceded that Defendants were entitled to judgment as a matter of law on Count IV.  Based on the record evidence, the Court independently finds Defendants established as a matter of law that Plaintiffs failed to identify any undisclosed easements or rights-of-ways affecting the Property.  *See* ECF No. 24 at 2, Defs.' Undisputed Material Fact 7.  To the extent Plaintiffs attempt to dispute this fact based on Graciela's mere belief that there existed undisclosed easements, such belief is not supported by any other evidence and does not create a question of fact.  Summary judgment is granted in Defendants' favor on Count IV, and the Court does not discuss Count IV further.

must be resolved in [the non-movant's] favor, allegations alone will not defeat summary judgment.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted).  The inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**B.    RPCDA – General Standards[5]**

Oklahoma's Residential Property Condition Disclosure Act ("RPCDA"), Okla. Stat. tit. 60, §§ 831-839, requires a seller of property to "deliver, or cause to be delivered, to the purchaser of such property . . . [a] written property condition disclosure statement on a form established by the Oklahoma Real Estate Commission which shall include the information set forth in subsection B of this section."  Okla. Stat. tit. 60, § 833(A).  The "disclosure statement" contemplated in § 833(A)(2) "shall include an identification of items and improvements which are included in the sale of property and whether such items or improvements are in normal working order."  *Id.* § 833(B)(1).  In relevant part, the statute also provides that the "disclosures required shall also include a statement of whether the seller has actual knowledge of defects or information in relation to the following: a. water and sewer systems, including . . . water seepage or leakage, drainage or grading problems and flood zone status, b. structural systems, including the roof, walls, floors,

---

[5]  Because this is a diversity action, Oklahoma substantive law applies to Plaintiffs' state law claims. *Yaffe Cos., Inc. v. Great Am. Ins. Co.*, 499 F.3d 1182, 1185 (10th Cir. 2007); *Barrett v. Tallon,* 30 F.3d 1296, 1300 (10th Cir. 1994) ("A federal court sitting in diversity applies the substantive law . . . of the forum state.").

foundation and any basement, . . . i. any other defects known to the seller, and j. other matters the Oklahoma Real Estate Commission deems appropriate." *Id.* § 833(B)(1)(a)-(j).

The statute defines "property" as "residential real property improved with not less than one nor more than two dwelling units." *Id.* § 832(8).  The statute defines a "defect" as "a condition, malfunction or problem that would have a materially adverse effect on the monetary value of the property, or that would impair the health or safety of future occupants of the property." *Id.* § 832(9).  The statute defines "disclosure" as "a written declaration required by this act based on actual knowledge of the seller regarding certain physical conditions of the property" and clarifies that a disclosure under the RPCDA "is not a warranty, implied or express, of any kind." *Id.* § 832(10).

Although the RPCDA contains certain exemptions, it applies to most residential real property transactions. *Rickard v. Coulimore*, 505 P.3d 920, 923 (Okla. 2022).  One purpose of the RPCDA is to limit the doctrine of caveat emptor in real estate sales and expand situations in which a seller may be held liable for structural or other covered defects. *See Stauff v. Bartnick*, 387 P.3d 356, 361 (Okla. Civ. App. 2016).  However, the "sole and exclusive civil remedy" under the RPCDA is "an action for actual damages, including the cost of repairing the defect, suffered by the purchaser as a result of a defect existing in the property as of the date of acceptance."  Okla. Stat. tit. 60, § 837(B); *Rickard*, 505 P.3d at 923 ("The RPCDA provides the sole and exclusive remedy for civil actions for a seller's failure to disclose to the buyer a defect which was actually known to the seller prior to acceptance of an offer to purchase.").  Punitive damages are excluded from recovery. *See White v. Lim*, 224 P.3d 679, 684 (Okla. Civ. App. 2009) (limiting "the right of a purchaser to recover for failure to disclose known defects in residential property to those provided in the [RPCDA] which expressly prohibits awards for exemplary damages").

The relevant Oklahoma Uniform Jury Instructions require a buyer to prove the following elements: (1) "[a] material defect or defects existed in the residence," (2) the seller "failed to disclose the defect or defects in the residence to [the buyer] in a written disclosure statement," (3) the seller "had actual knowledge of the defect or defects before the acceptance of the offer to purchase the residence," and (4) the buyer "suffered damages." Okla. Unif. Jury Instr. CV 30-3. The instructions define "defect" consistent with the statute. *Id.* 30-2. The instructions define the "measure of damages" as "the amount of money that will reasonably and fairly compensate [the buyer] for the actual damages sustained as a result of the defect or defects, including the cost of repairing the defect or defects." *Id.* 30-4.

## C.    Fry Ditch Erosion (Counts I and V)

Defendants are entitled to summary judgment on all RPCDA claims related to the alleged defect of Fry Ditch Erosion because: (1) Plaintiffs cannot prove Fry Ditch Erosion was a "defect"; (2) Plaintiffs cannot prove Fry Ditch Erosion was a required "disclosure"; and (3) Plaintiffs cannot prove damages under the RPCDA's limited civil remedy provision.

### 1.    Defect

Plaintiffs cannot establish that Fry Ditch Erosion behind the Property, or erosion near the Back Fence behind the Property, constitute "a condition, malfunction or problem that would have a materially adverse effect on the monetary value of the property." Okla. Stat. tit. 60, § 832(9). The undisputed facts demonstrate that the alleged Fry Ditch Erosion, and the identified effects of such erosion, exist wholly outside the boundaries of the Property. As conceded by Plaintiffs, the bank of Fry Ditch allegedly in need of remediation is approximately twenty feet outside the boundary lines of the Property, within a section of land called Reserve D. Reserve D is owned by Wood Creek HOA. The only effect of Fry Ditch Erosion identified by Plaintiffs, a large hole and

erosion near the Back Fence, is approximately thirteen feet outside the boundary lines of the Property, within a section of land called Reserve C. Reserve C is also owned by Wood Creek HOA. Any repairs or remediation would be completed outside the bounds of the Property and cannot be deemed to affect the "monetary value" of the Property. Plaintiffs also failed to present evidence that the alleged defect of Fry Ditch Erosion had reached, affected, damaged, or otherwise affected the Property at issue by the time of sale.[6]

Assuming other types of evidence may be used to demonstrate impact on monetary value of the Property, Plaintiffs failed to present any such evidence here. For example, Plaintiffs failed to offer testimony from themselves or a real estate expert that Fry Ditch Erosion adversely affected the Property's value at the time of sale or affected the resale value of the Property. Plaintiffs have not presented sufficient evidence to reach a factfinder on whether Fry Ditch Erosion was a "condition, malfunction or problem" that would have a "materially adverse effect" on the monetary value of the Property.

The wording of the relevant jury instructions supports this conclusion. The first two elements require Plaintiffs to show a "material defect or defects existed in the residence" and that Defendants "failed to disclose the defect or defects in the residence . . . in a written disclosure statement." *See* Okla. Unif. Jury Instr. CV 30-3. Here, the undisputed facts demonstrate this undisclosed defect of Fry Ditch Erosion originated off "the residence" and had not reached or impacted "the residence," *i.e.*, the property sold, at the time of the required disclosures.

Plaintiffs rely on *Marcantel v. Michael & Sonja Saltman Family Trust*, 993 F.3d 1212 (10th Cir. 2021), which applies Utah law, in support of their argument that Fry Ditch Erosion and its

---

[6] According to Plaintiffs, the Stormwater Runoff affecting the south side of the Property was allegedly caused by runoff from roofs and/or problems with a neighbor's driveway slope, *see* ECF No. 34-1, Graciela Dep. at 20:23-22:7, rather than Fry Ditch Erosion.

effects on the Back Fence are a "defect" under the RPCDA.  Utah law imposes a duty on sellers of real property to disclose material known defects that cannot be discovered by a reasonable inspection by an ordinary prudent buyer, but it does not define the term "defect."  *Id.* at 1223.  The Tenth Circuit predicted the Utah Supreme Court would hold that an undisclosed sewer pipeline easement running under the lot in question qualified as a "defect" because the pipeline easement "significantly inhibited development of the Property by limiting available design concepts."  *Id.* at 1225.  The sewer pipeline easement included a "tangible sewer pipe [that] runs beneath the Property," and the court saw "no reason why that pipe is less of a physical defect than [cracks in a swimming pool or unstable soil beneath a foundation of a house]."  *Id.* at 1226.  This case is unhelpful to Plaintiffs.  The identified "defect" in that case was a tangible pipeline beneath the property itself, rather than a pipeline *near* the property that somehow prohibited development plans.  Here, the evidence shows the alleged undisclosed defect of Fry Ditch Erosion originated off the Property and had not reached, affected, or damaged the Property in any way.[7]

Plaintiffs also cannot show Fry Ditch Erosion is a condition, malfunction or problem that would have a materially adverse effect on the "health or safety of future occupants of the property."  Okla. Stat. tit. 60, § 832(9).  Plaintiffs rely solely on their interrogatory responses that they "do not feel safe on their property and rainfall brings heightened concerns and worry about the erosion of the creek bank," and that their "safety is at risk during every rain fall."  ECF No. 24-7 at 4.  However, Plaintiffs failed to present evidence of any actual flooding, near flooding, or other significant events giving rise to reasonable safety concerns while either Defendants or Plaintiffs

---

[7] As discussed at the Hearing, the Court does not hold that an alleged "defect" such as erosion may never *originate* off the Property.  The Court merely holds there must be evidence the defect reached, impacted, or had some effect within the boundaries of the Property by the time of the required disclosures.  Here, Plaintiffs failed to present any such evidence.

owned the Property. Plaintiffs' unsupported statements are insufficient to create a question of fact for trial on the existence of a safety-related "defect."

### 2.    Disclosure

Assuming Plaintiffs could show the existence of a "defect" under the statutory definition, Plaintiffs cannot show this defect was a required "disclosure" under the RPCDA. A "disclosure" is "a written declaration required by this act based on actual knowledge of the seller regarding certain *physical conditions of the property*." Okla. Stat. tit. 60, § 832(9) (emphasis added). Here, the Fry Ditch Erosion behind the Property, assuming it was known by Defendants, cannot be deemed a physical condition of the Property, because it had not yet reached or tangibly impacted the Property. The hole/erosion near the Back Fence behind the Property, assuming it was known by Defendants, also was not a physical condition of the Property.

The wording of the Disclosure Statement itself supports this conclusion. Plaintiffs seek to prove Defendants violated the RPCDA based on their "no" answer to the following question: "Are you aware *of the property being damaged or affected* by flood, storm run-off, sewer backup, draining or grading defects?" ECF No. 24-3 (emphasis added). Here, the undisputed facts demonstrate the alleged defect of Fry Ditch Erosion occurred wholly outside the bounds of the Property and had not yet "damaged or affected" the Property in any tangible way when Defendants answered this question. Defendants were not required to disclose a defect that originated off the Property and had not damaged or affected the Property at the time of required disclosures.

### 3.    Damages

Assuming Plaintiffs could prove Fry Ditch Erosion behind the Property qualified as a "defect," and that it was a required "disclosure" under the RPCDA, they could not prove recoverable damages. By statute, the "sole and exclusive civil remedy" is "an action for actual

damages, including the cost of repairing the defect, suffered by the purchaser as a result of a defect *existing in the property as of the date of acceptance*." Okla. Stat. tit. 60, § 837(B) (emphasis added). Damages are an element of the cause of action. Okla. Unif. Jury Instr. 30-3. As explained above, Plaintiffs seek to recover damages related to Fry Ditch Erosion for repair or remediation of property owned entirely by Wood Creek HOA on Reserve C and Reserve D, rather than on Property sold to them by Defendants. Plaintiffs have not presented any evidence of costs of remediation or repair to the Property itself, or any other actual damages caused by this alleged defect.

During the Hearing, Plaintiffs' counsel acknowledged this problem but argued Plaintiffs should still be able to recover from Defendants, because Plaintiffs pay dues to Wood Creek HOA, because the HOA will never make the repairs, and because Defendants erected the Back Fence on Reserve C. This argument has some appeal. Defendants paid for installation of the Back Fence, despite that it was located off the Property on Reserve C, and it is possible Plaintiffs will end up paying for any repairs to the Back Fence, if permitted to do so by the other property owner. However, the Court is unwilling to hold that sellers are liable for costs of remediating land outside the bounds of the property sold. Such holding would ignore the limited civil remedy provision of the RPCDA. Such provision is limited to costs of repairing defects existing "in the property as of the date of acceptance," not defects to adjoining property. The statute simply does not contemplate a seller being held liable for damages to compensate a buyer who makes elective repairs to neighboring property. This would expand damages under the RPCDA in an impermissible manner not supported by the statutory scheme.[8]

---

[8] Based on Graciela's deposition testimony, she recognizes Plaintiffs cannot remediate property they do not own. ECF No. 34-1 at 20 (explaining that Plaintiffs lack authority to improve property owned by Woodcreek HOA). Her testimony also indicates that the remedy Plaintiffs actually

To the extent Plaintiffs argue they may recover remediation costs because Fry Ditch Erosion may affect the Property at some future time, this argument fails for two reasons. First, any such damages caused by erosion reaching the Property at some future time would not be caused by a defect existing in the Property as of the date of acceptance. As explained above, there were no defects existing "in the Property" as of the date of acceptance and no corresponding damages to the Property. Second, even assuming damages are legally recoverable for future defects arising within the bounds of the Property, Plaintiffs have not presented admissible, non-speculative testimony on this topic. The Court excluded the expert "opinion" of Smith that erosion near the Property would worsen with time as preliminary in nature and not based on adequate facts. *See* ECF No. 56 at 13-15. The Court also excluded the proposed testimony of Smith that any remediation costs would be similar to those incurred by another property owner who lives across the creek from Plaintiffs. *Id.*[9] Any proposed damages or damages model based on predicted future effects within the bounds of the Property is both legally flawed and factually unsupported.

### D. Stormwater Runoff (Counts I, II, and III) and Roof Leak (Counts III and V)

As to these alleged defects, Defendants first argue that Plaintiffs cannot demonstrate that the Stormwater Runoff or Roof Leak rise to the statutory definition of "defect," because such defects were "minor" and did not have a "materially adverse" effect on the value of the Property. *See* ECF No. 24 at 15 ("Nearly every home will experience minor leaks and rainfall of some kind.

---

desire is recission of the sale agreement. *Id.* at 48 (explaining that she just "does not want the house" due to the alleged defect of Fry Ditch Erosion). However, rescission is not an available remedy under the RPCDA. *See generally White*, 224 P.3d at 682-683 (holding that RPCDA provides exclusive civil remedy for nondisclosures in conjunction with sale of residential property, where plaintiffs originally brought tort claims for fraud and sought rescission of the agreement).

[9] Based on the other alternative reasons for granting summary judgment, the Court would reach the same conclusion on Fry Ditch Erosion had the Court considered Smith's report in ruling on this motion.

But those conditions alone do not rise to the statutory definition . . . .").[10]  Second, Defendants argue Plaintiffs cannot demonstrate they had actual knowledge of either alleged defect prior to sale.

### 1.    Defect – "Materially Adverse Effect"

Unlike the Fry Ditch Erosion existing behind the Property, Plaintiffs have presented evidence that the other two alleged defects occurred directly on the Property and had adverse effects within the bounds of the Property.  Defendants argue, however, that these defects still did not have a "materially adverse" effect on the value of the Property.

The parties did not cite, and the Court did not locate, Oklahoma case law explaining what rises to the level of a "materially adverse" effect on the value of the Property, and the uniform jury instructions merely quote the statute.  "In cases requiring statutory construction, the cardinal rule is to ascertain and give effect to the intent of the Legislature."  *Lopez v. Rollins*, 303 P.3d 911, 914 (Okla. Civ. App. 2013).  "The words of a statute will be given a plain and ordinary meaning, unless it is contrary to the purpose and intent of the statute considered as a whole."  *Id.*

Here, the relevant statute and form developed by the Oklahoma Real Estate Commission provide some guidance as to legislative intent.  The statute itself requires disclosures of "defects and information" related to "water and sewer systems, including . . . water seepage or leakage, drainage or grading problems" and "structural systems, including the roof . . . ."  Okla. Stat. tit. 60, § 833(B)(1).  The form, which was utilized by the parties in this case, asks the following question: "Are you aware of the property being damaged or affected by flood, *storm run-off*, sewer backup, draining or grading defects?" and "Are you aware of any defect or condition affecting the interior

---

[10] This first argument consists of only a few sentences and was not well-developed in Defendants' Motion for Summary Judgment.

or exterior walls, ceilings, *roof structure*, slab/foundation, basement/storm cellar, floors, windows, doors, fences or garage?"   ECF No. 24-3 (emphasis added).   The fact that roof issues and stormwater runoff are expressly included supports the conclusion that these two types of defects are not considered trivial and may satisfy the relevant definition.  *Cf. Lopez*, 303 P.3d at 915-16 (holding that a plaintiff's claim regarding misinformation about square footage fell outside the RPCDA because statute applies only when alleged "misinformation" relates to defects or matters listed in the statute).

Further, the Oklahoma Court of Civil Appeals, in reversing a trial court's grant of summary judgment on the issue of actual knowledge, discussed the seller's knowledge of receipts for sewage repairs, plumbing repairs, and termite inspections.   Although the court did not address whether these types of defects rose to the level of "materially adverse" to the value of the Property, the case proceeded to trial on what appear to be similar types of "defects" as those alleged here.   *See generally Stauff*, 387 P.3d at 363-64 (finding question of fact for trial on issue of whether seller had knowledge of prior water damage to the basement, certain plumbing problems, and certain termite problems, without discussion of whether these issues had "materially adverse" effect on value of property).

Here, construed favorably to Plaintiffs, Plaintiffs ultimately made repairs related to the Stormwater Runoff and Roof Leak in the total amount of approximately $10,000.   Plaintiffs contend that all the defects, if disclosed, would have affected the sale price and/or caused Plaintiffs to offer a lower price for the Property.   Based on the statute, the form, and existing case law, this

evidence is sufficient to, at a minimum, create a question of fact on whether the alleged non-disclosures had a "materially adverse effect" on the value of the Property.[11]

### 2.    Actual Knowledge

The RPCDA does not define actual knowledge.  Oklahoma law indicates actual knowledge can be proven by circumstantial evidence such as: (1) a seller's receipt of a professional report disclosing the alleged defect, *see Carbajal v. Safary*, 216 P.3d 289, 291 (Okla. 2009); (2) a prior seller's disclosure documents referencing the defect; (3) a seller making prior repairs to the alleged defect; and (4) a seller's possession or initialing of receipts, invoices, or estimates for prior repairs, *see Stauff*, 387 P.3d at 363-64 (reversing grant of summary judgment where documentary evidence potentially viewed by seller created dispute of fact regarding sellers' actual knowledge of defect). *See also Kipp v. Myers*, 753 F. Supp. 2d 1102, 1108 (D. Kan. 2010) (applying Kansas law on fraud) (finding issue of fact regarding defendants' knowledge of flooding where defendants had access to documentation of prior flooding).  Generally, in assessing issues such as actual knowledge or fraudulent intent in real estate non-disclosure cases, courts must be careful not to "weigh the evidence and reach[] a conclusion based on its assessment of that evidence."  *See Marcantel*, 993 F.3d at 1233 (reversing trial court's grant of summary judgment on issue of fraudulent intent where evidence created inferences of seller's prior knowledge of defect).

As to Stormwater Runoff, Defendants offered the following evidence.  Defendants and a neighbor installed French drains to catch water running off their roof about ten years before the sale.  The installation of these drains was disclosed on the Disclosure Statement.  At the time of sale, the south side of the Property had only dirt and no grass.  According to Defendants, this was

---

[11] The Court recognizes that the "defect" of Fry Ditch Erosion is no longer in the case.  However, the Court still finds the evidence sufficient to survive summary judgment.

due entirely to a lack of sun, and the Property experienced only normal water flow that would be associated with any rainfall.

Construed favorably to them, Plaintiffs' evidence shows the following.  Soon after purchasing the Property, the south side of the Property became not only covered in dirt but also eroded to the point of revealing drains and the footing of the foundation.  Enrique testified the lack of grass was due at least in part to Stormwater Runoff, which he noticed after a significant "washout" occurring soon after Plaintiffs moved in.  After experiencing these problems, Plaintiffs explored the area and formed the belief that the fence had been "lowered" in some manner prior to sale.

Plaintiffs have created a question of fact as to whether Defendants had actual knowledge of a persisting problem with Stormwater Runoff on the south side of the Property.  This is based on (1) Plaintiffs' testimony that Defendants had lowered or otherwise attempted to repair the fence; (2) Plaintiffs' testimony that, immediately after the first large storm, Plaintiffs saw exposed drains and foundation footing, rather than merely dirt; (3) Defendants previously made an expensive repair to improve drainage in the same area; and (4) Defendants admitted grass did not grow there, although there is dispute as to whether this is due to lack of sun or water runoff.  Plaintiffs' evidence raises an inference that Defendants saw problems in plain view on the Property and tried to mitigate continuing problems even after installation of drains.  *Cf. Horejs v. Kitchin*, No. 1:19-cv-855, 2022 WL 16856035, at *8-9 (S.D. Ohio Nov. 10, 2022), *aff'd,* No. 22-4009, 2023 WL 4044582 (6th Cir. June 16, 2023) (applying Ohio law to fraud claim) (granting summary judgment to defendants because mold and water damage were latent defects that could not have been discovered without removing drywall, ceiling tiles, or carpet, and there was no evidence that defendants had ever attempted repair).  It also raises an inference that similar "washouts" exposing

drains and foundation had happened in the past, rather than occurring for the first time after Plaintiffs moved in. A factfinder must assess witness credibility to resolve the issue of actual knowledge.

As to the Roof Leak, Defendants' evidence demonstrates the following. Defendants replaced the roof in November 2022 after the roof received hail damage. Defendants disclosed the roof replacement on the Disclosure Statement. Plaintiffs' inspectors found there was no roof leak. Plaintiffs and their inspectors were aware of a visible but dry water stain in the garage.

Construed favorably to them, Plaintiffs' evidence demonstrates the following. Plaintiffs and their inspectors believed the water stain occurred sometime before the roof replacement in 2022. However, Plaintiffs then experienced a roof leak quickly after moving in and had to hire a professional to repair the leak. Defendants used a friend from Texas to repair the roof in 2022, the roofer was not licensed in Oklahoma, and the roofer refused to repair or warrant the work. Plaintiffs contend the 2022 roof replacement was defective in the "dead valley" over the garage, which is where the water stain was visible at the time of sale.

Plaintiffs have created a question of fact as to whether Defendants had actual knowledge of a continuing Roof Leak even after the 2022 roof replacement. This is based on (1) Plaintiffs' testimony that the roof leak occurred quickly after Plaintiffs moved in, raising an inference that it had leaked during prior rainfall even after the replacement; (2) evidence that there was a defective area above the garage, despite the recent roof replacement, in the same area of a visible water stain at the time of sale; and (3) Defendants' roofer was a friend who did not warrant his work. Although there is countervailing evidence, including the clean roof inspection at the time of sale, the Court again finds a factfinder must assess witness credibility to resolve the issue of actual knowledge. *See Cummings v. Carroll,* 866 S.E.2d 690, 690-95 (N.C. 2021) (applying North Carolina law on

fraud claim) (finding issue of material fact regarding defendants' knowledge where defendants had paid for repairs and been assured the defect was fixed, but "only a few months had elapsed" between completion of repairs and plaintiffs' discovery of water intrusion).

### III.     Conclusion

For the reasons detailed above, Defendants' Motion for Summary Judgment (ECF No. 24) is **GRANTED IN PART** and **DENIED IN PART**.

The motion is **GRANTED** as to all claims that Defendants failed to disclose certain easements or rights of way and failed to disclose the alleged defect of Fry Ditch Erosion.

The motion is **DENIED** as to all claims that Defendants failed to disclose the alleged defects of Stormwater Runoff and Roof Leak.

Defendants are entitled to judgment as a matter of law on Count IV.  Counts I, II, III, and V remain in the case as they relate to the alleged defects of Stormwater Runoff and Roof Leak.

**SO ORDERED** this 3rd day of December, 2025.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**